Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUSSELL WOLFE,<br><br>     Plaintiff,<br><br>  vs.<br><br>RUTH'S HOSPITALITY GROUP, INC., CHERYL HENRY, ROBIN P. SELATI, GIANNELLA ALVAREZ, MARY BAGLIVO, CARLA R. COOPER, STEPHEN M. KING, MICHAEL P. O'DONNELL, and MARIE L. PERRY,<br><br>     Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Russell Wolfe ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## <u>SUMMARY OF THE ACTION</u>

1. Plaintiff brings this stockholder action against Ruth's Hospitality Group, Inc. ("Ruth's" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Darden Restaurants, Inc. ("Parent"),

through merger vehicle Ruby Acquisition Corporation ("Merger Sub" collectively with Parent, "Darden") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a May 3, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, in exchange for each share of Ruth's common stock owned Ruth's shareholders will receive $21.50 in cash.  As a result of the consummation of the Proposed Transaction, Ruth's will become an indirect wholly-owned subsidiary of Darden.

3.     Thereafter, on May 16, 2023, Ruth's filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.     The Proposed Transaction is unfair for a number of reasons.  Significantly, the Recommendation Statement describes an insufficient process.  For instance, the Recommendation Statement is silent as to whether a committee of disinterested directors was created to run the sales process.

5.     Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Ruth's shares in favor of the Proposed Transaction.  The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Ruth's, provided by Ruth's to the Company's financial advisor Jefferies, LLC ("Jefferies"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Jefferies and provided to the Company and the Board.  Accordingly, this action seeks to enjoin the Proposed Transaction.

7.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.      Plaintiff is a citizen of Florida and, at all times relevant hereto, has been a Ruth's stockholder.

9.      Defendant Ruth's, together with its subsidiaries, develops, operates, and franchises fine dining restaurants under the Ruth's Chris Steak House name.  Ruth's is incorporated under the laws of the State of Delaware and has its principal place of business at 1030 W. Canton Avenue, Suite 100, Winter Park, FL 32789.  Shares of Ruth's common stock are traded on the Nasdaq Stock Exchange under the symbol "RUTH".

10.     Defendant Cheryl Henry ("Henry") has been a Director of the Company at all relevant times.  In addition Henry serves as the President and Chief Executive Officer ("CEO") of the Company, as well as serving as Chairwoman of the Company Board of Directors.

11.     Defendant Robin P. Selati ("Selati") has been a Director of the Company at all relevant times.

12.     Defendant Giannella Alvarez ("Alvarez") has been a director of the Company at all relevant times.

13.     Defendant Mary Baglivo ("Baglivo") has been a director of the Company at all relevant times.

14.     Defendant Carla R. Cooper ("Cooper") has been a director of the Company at all relevant times.

15.     Defendant Stephen M. King ("King") has been a director of the Company at all relevant times.

16.     Defendant Michael P. O'Donnell ("O'Donnell") has been a director of the Company at all relevant times.

17.     Defendant Marie L. Perry ("Perry") has been a director of the Company at all relevant times.

18.     Defendants identified in ¶¶ 10 - 17 are collectively referred to as the "Individual Defendants."

19.     Non-Party Parent through its subsidiaries, owns and operates full-service restaurants in the United States and Canada.   Parent is a Florida Corporation headquartered at 1000 Darden Center Drive, Orlando, FL 32837.  Shares of Parent's stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "DRI".

20.     Non-Party Merger Sub is an affiliate of Parent created to effectuate the proposed transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(d), 14(e), and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

24.     Ruth's, together with its subsidiaries, develops, operates, and franchises fine dining restaurants under the Ruth's Chris Steak House name. The Company's restaurants offer food and beverage products to special occasion diners and frequent customers, as well as business clients.

25.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid performance.  For example, in the February 23, 2023 press release announcing its 2022 Q4 and FY Financials, total restaurant sales in the fourth quarter increased 9.6% year on year, as well as an increase in Adjusted EBITDA of 12.2% year-on-year.

26.     Speaking on these positive results, Company President, CEO, Chairperson and Defendant Henry stated as follows, "Our fourth quarter performance marked the end to another impressive year for our team at Ruth's Chris Steak House as we generated double-digit top-line growth and strong earnings for the year."

27.     Defendant Henry continued, noting bright future prospects for Ruth's, stating, "As we look to 2023, I am excited about our opportunities to grow and evolve our 57-year-old iconic brand. We have a promising restaurant pipeline; the launch of Phase 2 of our Data Digital Transformation is expected to drive the next evolution of the brand; and our capital position remains strong. Together with our veteran operators and franchise partners, we believe we are well-positioned to continue to elevate our business in the years to come."

28.     These positive clinical results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Ruth's.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

29.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Ruth's to enter into the Proposed Transaction without providing requisite information to Ruth's stockholders such as Plaintiff.

*The Flawed Sales Process*

30.     As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.  Moreover, the Recommendation is materially deficient in the information it fails to provide.

31.     The Recommendation Statement fails to adequately disclose if a committee of independent board members was created to run the sales process.  If such a committee was created the Recommendation Statement should have disclosed the identity of the Board members who made up such committee as well as the extent of powers of such a committee in evaluating the Proposed Transaction, including whether that committee was empowered to veto a potential transaction not in the best interest of common shareholders.  On the other hand, if such a committee was not created the Recommendation Statement should provide adequate reasoning as to why.

32.     The Recommendation Statement also fails to provide adequate information regarding Boston Consulting Group, Inc., including what specific role this entity had in the sales process as well as the specific amount of consideration paid to or owed to this entity for such services performed.

33.     In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Darden, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way.

34.     The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into

between the Company and any potentially interested third parties, including Darden, throughout the sales process, if any, would fall away.

35.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

36.     On May 3, 2023, Ruth's and Darden issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> ORLANDO, Fla., (May 3, 2023) - Darden Restaurants, Inc. ("Darden") (NYSE:DRI) and Ruth's Hospitality Group, Inc. ("Ruth's") (Nasdaq: RUTH), jointly announced today that they have entered into a definitive merger agreement pursuant to which Darden will commence a tender offer to acquire all of the outstanding shares of Ruth's for $21.50 per share, in an all-cash transaction with an equity value of approximately $715 million. Ruth's, owner and operator of Ruth's Chris Steak House ("Ruth's Chris"), will complement Darden's portfolio of differentiated brands which currently includes Olive Garden, LongHorn Steakhouse, Yard House, Cheddar's Scratch Kitchen, The Capital Grille, Seasons 52, Bahama Breeze and Eddie V's.

> Ruth's Chris was founded in 1965 in New Orleans, Louisiana, by Ruth Fertel and features signature USDA Prime steaks served sizzling on 500-degree plates, New Orleans-inspired sides and an award-winning wine list. Ruth's Chris has 154 locations around the globe, including 80 company-owned or -operated restaurants and 74 franchised restaurants, generating systemwide sales of over $860 million, total revenues over $500 million, and average annual restaurant volumes for company-owned or -operated locations of $6.2 million in Ruth's fiscal year 2022.

> "Ruth's Chris is a strong and distinctive brand in the fine dining segment with an impressive history of delivering elevated dining experiences to their loyal guests," said Darden President and CEO Rick Cardenas. "It fits the criteria we have for adding a brand to our portfolio and supports our winning strategy. Ruth's Chris is a great complement to our portfolio of brands, and I'm pleased to welcome their nearly 5,000 team members to Darden."

> Cheryl Henry, President, CEO and Chairperson of Ruth's, stated, "We are excited about the opportunity to join the Darden family. Our strategy and operating philosophy aligns well with Darden, and we have a strong cultural fit that should ensure a smooth transition. This transaction will also provide more opportunities for our team members to develop in their careers as we continue to grow our 57-year-old iconic brand."

Highlights

- Darden has agreed to acquire Ruth's for $21.50 per share, with a total transaction equity value of approximately $715 million, representing a 34% premium to the May 2 closing price and a 32% premium to the 30-day volume weighted average price.

- Purchase price represents a 9.4x implied multiple of Ruth's fiscal year 2022 Transaction Adjusted EBITDA.*

- Darden expects pre-tax synergies of between $5 and $10 million within the first year, and between $15 and $20 million in the second year.

- Total acquisition and integration-related expenses are expected to be approximately $55 to $60 million.

- Expected to be accretive to Darden's diluted net earnings per share in fiscal year 2024 by approximately 10 to 12 cents, excluding acquisition and integration-related expenses.

- Transaction is expected to be completed in June, subject to satisfaction of customary closing conditions.

- The transaction has been unanimously approved by the boards of directors of both Darden and Ruth's.

- Cheryl Henry will continue to lead as President of Ruth's Chris and will report to Rick Cardenas.

* See the "Non-GAAP Information" below for more details, including Darden's definition of Transaction Adjusted EBITDA and a reconciliation to Ruth's Net Income.

Summary of the Transaction

Under the terms of the merger agreement, a wholly-owned subsidiary of Darden ("Merger Sub") will commence a tender offer to acquire all of the outstanding shares of Ruth's for $21.50 per share in cash. This represents a premium of approximately 34% to Ruth's closing stock price on May 2, 2023 and a premium of approximately 32% per share to Ruth's 30-day volume-weighted average price. Ruth's board of directors unanimously recommends that Ruth's stockholders tender their shares in the tender offer. Additionally, all of Ruth's directors and executive officers have (subject to certain terms and conditions) agreed to tender their shares,

representing approximately 4.4% of Ruth's outstanding common stock, in the tender offer.

Darden has sufficient liquidity to complete the all-cash transaction without obtaining additional financing. Darden expects to continue to maintain a strong balance sheet and have sufficient capital to achieve its stated capital allocation priorities of maintaining existing restaurants, growing new restaurants and returning capital to shareholders through dividends and strategic share repurchases.

The closing of the tender offer will be subject to certain conditions set forth in the merger agreement, including the tender of shares representing at least a majority of the total number of Ruth's outstanding shares, the expiration or termination of the applicable waiting period under the HSR Act and other customary conditions. Upon the successful completion of the tender offer, Darden will acquire all remaining shares not tendered in the tender offer through a second-step merger at the same price per share.

### *Potential Conflicts of Interest*

37.     The breakdown of the benefits of the deal indicates that Ruth's insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Ruth's.

38.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name of Executive Officer or Director | Number of Shares | Cash Consideration for Shares ($) |
|---|---|---|
| Giannella Alvarez | 19,645 | $ 422,368 |
| Mary L. Baglivo | 12,180 | $ 261,870 |
| Carla R. Cooper | 51,829 | $ 1,114,324 |
| Stephen M. King | 3,889 | $ 83,614 |
| Michael P. O'Donnell | 846,936 | $ 18,209,124 |
| Marie L. Perry | 16,557 | $ 355,976 |
| Robin P. Selati | 24,113 | $ 518,430 |
| Kristy Chipman | 9,444 | $ 203,046 |
| Cheryl J. Henry | 415,890 | $ 8,941,635 |
| David E. Hyatt | 18,080 | $ 388,720 |

| | | |
|---|---|---|
| Mark Kupferman | — | $ — |
| Marcy N. Lynch | 10,245 | $ 220,268 |

39.     In addition, Company insiders, currently own large, illiquid portions of stock options, restricted share, or other equity award, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| Name of Executive Officer or Director | Number of Shares Subject to Unvested Company RSAs (#) | Number of Shares Subject to Unvested Company RSUs (#) | Number of Shares Subject to Unvested Company PSUs (#) | Number of Shares Subject to Vested Company DSUs (#) | Cash Consideration for Unvested Company RSAs, Company RSUs, Company PSUs, and Company DSUs ($) |
|---|---|---|---|---|---|
| Cheryl Henry | 247,186 | — | 153,053 | — | $ 8,605,139 |
| Kristy Chipman | 83,685 | — | 77,415 | — | $ 3,463,650 |
| Marcy N. Lynch | 46,781 | — | 40,786 | — | $ 1,882,691 |
| David Hyatt | 22,038 | — | 15,584 | — | $ 808,873 |
| Mark Kupferman | 19,931 | — | 19,931 | — | $ 857,033 |
| Giannella Alvarez (Director) | — | 20,246 | — | 851 | $ 453,586 |
| Mary L. Baglivo (Director) | — | 21,584 | — | 871 | $ 482,783 |
| Carla R. Cooper (Director) | — | 10,496 | — | — | $ 225,664 |
| Stephen M. King (Director) | — | 25,388 | — | 1,261 | $ 572,954 |
| Michael P. O'Donnell (Director) | — | 15,638 | — | 412 | $ 345,075 |
| Marie L. Perry (Director) | — | 10,496 | — | — | $ 225,664 |
| Robin P. Selati (Director) | — | 10,496 | — | — | $ 225,664 |

40.     In addition, certain employment agreements with certain Ruth's executives, entitle such executives to significant amounts of money conditioned upon the consummation of the merger and/or their termination.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them significant sums of money, compensation not shared by Plaintiff, as follows:

| Named Executive Officer(1) | Cash ($)(2) | Equity ($)(3) | Perquisites/ Benefits ($)(4) | Total ($) |
|---|---|---|---|---|
| Cheryl Henry | $ 5,854,908 | $ 8,605,139 | $ 90,000 | $ 14,550,047 |
| Kristy Chipman | $ 908,298 | $ 3,463,650 | $ 40,800 | $ 4,412,748 |
| Susan Mirdamadi | $ 9,250 | $ 679,809 | — | $ 689,059 |
| Marcy N. Lynch | $ 718,068 | $ 1,882,691 | $ 40,800 | $ 2,641,559 |
| David Hyatt | $ 444,633 | $ 808,873 | $ 38,400 | $ 1,291,906 |

41.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42.     Thus, while the Proposed Transaction is not in the best interests of Ruth's, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

43.     On May 16, 2023, the Ruth's Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

44.     Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

      a.   Adequate disclosure regarding if a committee of independent board members was created to run the sales process, including:

     i.  If such a committee was created, adequate disclosure of the identity of the Board members who made up such committee as well as the extent of powers of such a committee in evaluating the Proposed Transaction, including whether that committee was empowered to veto a potential transaction not in the best interest of common shareholders;

    ii.  If such a committee was not created, adequate disclosure regarding the reasoning as to why;

b.  Adequate disclosure regarding Boston Consulting Group, Inc., including what specific role this entity had in the sales process as well as the specific amount of consideration paid to or owed to this entity for such services performed;

c.  Whether the terms of any confidentiality agreements entered during the sales process between Ruth's on the one hand, and any other third party (including Darden), if any, on the other hand, differed from one another, and if so, in what way;

d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Darden) throughout the sales process, if any, would fall away; and

e.  The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Ruth's Financial Projections*

45.     The Recommendation Statement fails to provide material information concerning financial projections for Ruth's provided by Ruth's management and relied upon by Jefferies in its analyses.

46.     Notably, in its fairness opinion, Jefferies indicates that it reviewed, "certain information furnished to Jefferies and approved for Jefferies' use by Company management, including financial forecasts and analyses, relating to the business, operations and prospects of the Company."

47.     The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that Ruth's management provided to the Board and Jefferies. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

48.     With regard to the set of projections prepared by Ruth's management and provided to Jefferies, the Recommendation Statement fails to disclose material line items for important metrics as follows:

a.  Adjusted EBITDA, including all underlying inputs, metrics, and assumptions, including specifically: stock-based compensation expense, pre-opening expense, impairment / disposal expenses and other income / (expenses); and

b.  Free Cash Flow, including all underlying inputs, metrics, and assumptions, including specifically: capex and (increase) / decrease in net working capital.

49.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50.     Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Jefferies' financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction.  As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Jefferies*

51.     In the Recommendation Statement, Jefferies describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

52.     With respect to the *Selected Public Companies Analysis*, the Recommendation Statement fails to disclose the following:

a.   The specific metrics for each selected public company analyzed;

b.   The specific metrics, inputs, and assumptions used to determine the utilized FY 2023E EBITDA multiple reference range of 6.5x to 8.75x; and

c.   The specific metrics, inputs, and assumptions used to determine the utilized FY 2024E EBITDA multiple reference range of 5.5x to 7.75x.

53.     With respect to the *Selected Transactions Analysis*, the Recommendation Statement fails to disclose the following:

     a.   The specific date on which each selected transaction closed;

     b.   The specific aggregate value of each selected transaction;

     c.   The specific metrics for each selected transaction analyzed; and

     d.   The specific metrics, inputs, and assumptions used to determine the utilized LTM Adjusted EBITDA multiple reference range of 8.0x to 11.0x.

54.     With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

     a.   The terminal values for the Company calculated;

     b.   The specific metrics, inputs, and assumptions used to determine the utilized selected range of perpetuity growth rates of 2% to 4%;

     c.   The specific metrics, inputs, and assumptions used to determine the utilized selected discount rate range of 14.25% to 16.75%;

     d.   The Company's weighted average cost of capital utilized, and the specific metrics, inputs, and assumptions used to determine it;

     e.   The Company's net debt as of December 31, 2022 utilized; and

     f.   The number of fully diluted Company Shares outstanding utilized.

55.     With respect to the *Premiums Paid Analysis*, the Recommendation Statement fails to disclose the following:

     a.   The specific implied premiums for all selected all-cash transactions analyzed.

56.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

57.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

## FIRST COUNT

## Violations of Section 14(e) of the Exchange Act

## (Against All Defendants)

58.     Plaintiff repeats all previous allegations as if set forth in full herein.

59.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

60.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

61.     The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63.    The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

64.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

65.    Plaintiff has no adequate remedy at law.

**SECOND COUNT**

**Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9**

**(Against all Defendants)**

66.    Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

67.    Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

68.    Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

69.    SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

70.    Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts,

including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

71.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

72.     Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

73.     Plaintiff repeats all previous allegations as if set forth in full herein.

74.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

75.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The

Individual Defendants were able to, and did, control the contents of the Recommendation Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

76.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Ruth's' business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

77.     The Individual Defendants acted as controlling persons of Ruth's within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Ruth's to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Ruth's and all of its employees.  As alleged above, Ruth's is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 19, 2023                        **BRODSKY & SMITH**

By: *Evan J. Smith*
_____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*